UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | 23-CR-10311-JEK |
| | : | |
| HERBERT SMALL, | : | |
| Defendant. | : | |

### SENTENCING MEMORANDUM OF HERBERT SMALL

Herbert Small is a simple man. He has led a difficult life, with a father who was absent for much of his childhood due to his own incarceration. As the pre-sentence report details, Herbert has limited education and has suffered from traumatic brain injury in the past. He has been diagnosed with mild to moderate mental retardation.[1] He was sexually abused as a child. He has a limited ability to read. None of this excuses the choices he has made in life, and in this case, but they provide context for those decisions.

Herbert has readily admitted his guilt, and we have reached agreement with the government as to a fair sentencing recommendation. The pre-sentence report, however, contains a much harsher analysis. We submit that the court should follow the recommendation of the parties. The government, in its sentencing memorandum, has laid out clearly why the recommendation of the parties should be honored instead of the advisory guidelines range as calculated by probation. We thank and applaud the government for so fully honoring its agreement.

---

[1] Counsel has considered the issue of competence and discussed it with defendant and his mother. We note that one judge in the past ruled that Herbert was not mentally competent to stand trial. Herbert has consistently expressed an understanding of these charges, however, and has been able to review discovery and participate in decision making regarding this case. Moreover, in his previous federal case, counsel had him evaluated and he was found to be competent. Based on all of this, we believe him to be competent.

The recommended sentence of 24 months is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.  United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).  Application of the career offender guidelines would be unconscionably harsh in this case.  The two prior charges used by probation to arrive at career offender status come from the exact same conduct, prosecuted by both the state and federal governments pursuant to the doctrine of dual sovereignty.  The two prosecutions of the same activity do not establish the recent pattern of criminal activity the career offender guidelines were intended to address.

Unreasonable and incongruous results like the one presented in the pre-sentence report are precisely what prompted the Sentencing Commission to conduct a thorough study of the career offender guideline. *Report to the Congress: Career Offender Sentencing Enhancements*, U.S. Sent. Comm'n., August 2016 (*Career Offender Report*). The Commission undertook the study in order to "explore concerns that the career offender directive fails to meaningfully distinguish among career offenders with different types of criminal records and has resulted in overly severe penalties." Id at 2. The Sentencing Commission had good reason to be concerned that the career offender guideline is excessively harsh. In the vast majority of cases, sentencing judges found that the career offender guideline is simply too harsh when compared to the specific, individualized factors of § 3553(a). The study found that the range of within-guideline sentences for career offenders had decreased from 43.3% in FY 2005 to just 27.5% in FY 2014. Id at 22. Given these statistics, the study noted that "the anchoring effect of the guidelines for career offenders appears to be diminishing." Id at 23. Notably, the decrease of within-guideline

sentences for career offenders between 2005 and 2014 appears to have "primarily resulted from a steady increase in government sponsored departures and variances, including a four-fold increase in other government sponsored below range sentences." Id. at 22. Without government intervention in agreeing to or advocating for departures and variances, the application of the career offender guideline would presumably be just as excessively harsh as the Sentencing Commission originally believed.  Fortunately, the government here is supporting an appropriate variance.

The career offender guideline applies to instant and prior offenses for either crimes of violence or controlled substance offenses. USSG § 4B1.1(a). Herbert Small is a career offender solely due to controlled substances offenses.

Because Herbert Small is a career offender solely because of controlled substance offenses, he is in the category of defendants to whom the career offender guideline is the *most* unfair. The Sentencing Commission's study of the guideline found that "sentencing data demonstrates clear and notable differences between career offenders who have committed a violent offense and those who are deemed career offenders based solely on drug trafficking offenses." *Career Offender Report* at 8. Part of the reason for this result is that the career offender guideline increases with the statutory maximum, and federal drug statutes routinely have higher statutory maximums than violent offenses. Id at 31.  The Commission concluded that "drug trafficking only career offenders are not meaningfully different than other federal drug trafficking offenders and therefore do not categorically warrant the significant increases in penalties provided for under the career offender guideline." Id at 27. National sentencing data has revealed that sentencing judges have already addressed this problem by giving more weight to the non-career offender guideline in drug trafficking only cases. "The average sentence in the

cases involving drug trafficking only career offenders (134 months) is nearly identical to the average guideline minimum (131 months) before application of the career offender guideline." Id at 35. "This data may suggest that courts, and increasingly the government, view the career offender enhancement as overly severe for this group of career offenders, and that instead, a sentence that is consistent with other non-career offender drug trafficking offenders is more appropriate." Id.

Indeed, sentences for career offenders with only drug offense predicates were found to be so excessive that the Sentencing Commission has recommended that Congress amend the statute that created the career offender guideline in the first place. See 28 U.S.C. § 994(h). "The Commission recommends that Congress amend the directive to reflect this principle by *no longer including those who currently qualify as career offenders based solely on drug trafficking offenses*. These reforms would help ensure that federal sentences better account for the severity of the offenders' prior records, protect the public, and avoid undue severity for certain less culpable offenders." Id at 3 (emphasis supplied).

Similarly, the crack to powder disparity is a relic of mistaken (and possibly racist) sentencing analyses which deemed crack to be more dangerous than powder cocaine. The Department of Justice has commendably disavowed the disparity and the Sentencing Commission has recommended that it be abolished. Until that occurs, however, we urge that the Court adopt the position of the parties and vary from the advisory guidelines, sentencing Mr. Small as if it were powder cocaine in question.

As his mother notes, Mr. Small is a bit of a follower. As the government notes, he needs to start learning how to avoid the people who lead him into trouble. He is, however, at heart a simple decent man. As the attached character letters attest, he has a family that loves and

supports him, despite his issues.  The sentence urged by the parties fairly punishes him for his crimes while allowing him the hope of a better life to come.

          Respectfully submitted,

          /s/ Stephen G. Huggard
          Stephen G. Huggard (BBO#622699)
          stevehuggard@huggardlaw.com
          HUGGARD LAW LLC
          101 Arch Street, 8th Floor
          Boston, Massachusetts 02110
          (617) 875-2622

Certificate of Service

I, Stephen G. Huggard, hereby certify that, pursuant to Local Rule 5.2(b)(2), on this 25th day of August 2024, the foregoing document was sent by electronic mail to counsel of record.

          /s/Stephen G. Huggard